Filed 3/19/14  P. v. Leonardo CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B247926 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BA387357) |
| RAMON LEONARDO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Drew E. Edwards, Judge.  Affirmed.

Law Offices of Andy Miri and Andy Miri, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted appellant Ramon Leonardo of four felonies:  Sodomy of a child under 10 years of age (Pen. Code, § 288.7, subd. (a));[1] oral copulation and sexual penetration of a child under 10 years of age (§ 288.7, subd. (b)); and two counts of performing lewd acts upon a child (§ 288, subd. (a)).  Appellant was sentenced to a total state prison term of 48 years to life.

Appellant contends the trial court committed error by failing to (1) suppress statements he made to police, and (2) appoint him a Nahuatl interpreter at trial.  We disagree and affirm.

## BACKGROUND

Appellant's victim was his seven-year-old stepdaughter, A. L. (A.).  Because he does not challenge the evidence supporting his convictions and because the details of his crimes are thoroughly set forth by the parties, we discuss only the relevant procedural background at issue here.

**The Interview**

After he was taken into custody, appellant was interviewed by Detective Frank Ramirez of the Los Angeles Police Department.  The interview was conducted in Spanish.  The jury received a transcript of the interview and a video of the interview was played for the jury.  Appellant's handcuffs were removed  before any questioning began.  Detective Ramirez testified that he spent  nearly the first hour—"a great deal of time"—asking appellant general background questions to ensure that appellant could understand him.  He asked appellant such questions as his age (25), where he was from (Mexico), when he came here (19), where he worked (carwash), who he lived with (wife and stepdaughters), and if he had been in jail before (once).

After concluding general questioning, Detective Ramirez read appellant each of his *Miranda*[2] rights in Spanish.  After reading each right, Detective Ramirez asked

---

[1]     All statutory references are to the Penal Code unless otherwise indicated.

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

2

appellant if he understood.  Appellant responded "Si" each time.  Appellant agreed to continue talking with Detective Ramirez.

Detective Ramirez then asked appellant to sign a *Miranda* waiver form that was written in Spanish.  Detective Ramirez first asked appellant if he read Spanish and if he knew how to sign.  Appellant responded, "Yeah."  Detective Ramirez explained the form, which lists each of appellant's rights and asks if he understands each one.  Appellant initialed his rights and marked that he understood each one.  Appellant marked "Si" to the question asking if he wanted to continue talking, and he signed the form.

Detective Ramirez then began the interrogation.  Appellant eventually admitted sexually assaulting A. on two occasions.  Although he initially stated that he was just playing with her, he later admitted performing specific sexual acts.  He stopped touching A. because he realized what he was doing was wrong.

**Motion to Suppress, Hearing, and Ruling**

Appellant filed a pretrial motion to suppress the statements he made to Detective Ramirez, on the ground that appellant did not voluntarily, knowingly and intelligently waive his *Miranda* rights.  At the hearing, defense counsel argued that appellant did not understand the questions asked because of his low education level and limited understanding of the Spanish language.  According to defense counsel, appellant's native language was the Aztec dialogue of Nahuatl.  Defense counsel also argued that appellant was confused, as demonstrated by the fact that he said "so many ums, . . ."

The trial court denied the motion.  The court noted that it had the benefit of reading the interview transcript and that appellant "was able to carry out a conversation quite well in the entirety of the interview in Spanish."  The court found that the *Miranda* waivers were valid because they were voluntary and there was no sign of any coercion.

## DISCUSSION

### I.  The Trial Court Properly Denied the Motion to Suppress

#### A.  *Applicable Law*

Statements obtained during custodial interrogation are only admissible in evidence if police informed the suspect of his rights to remain silent and to have an attorney

3

present during questioning and obtained from the suspect a voluntary, knowing and intelligent wavier of those rights. (*Miranda, supra,* 384 U.S. at p. 475.) A valid waiver may be express or implied. (*People v. Whitson* (1998) 17 Cal.4th 229, 246.)

In determining whether a defendant waived his *Miranda* rights, a court must consider "the totality of the circumstances surrounding the interrogation." (*Fare v. Michael C.* (1979) 442 U.S. 707, 724–725.) In *Moran v. Burbine* (1986) 475 U.S. 412, the Supreme Court identified two distinct components of the inquiry: "'First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.'" (*Id.* at p. 421.) On appeal, we accept the trial court's resolution of disputed facts and inferences, and its evaluation of credibility, if supported by substantial evidence. (*People v. Whitson, supra,* 17 Cal.4th at p. 248.)

### B. Analysis

Appellant argues that his *Miranda* waivers were not voluntarily made because Detective Ramirez used a "ruse" to obtain his confession, by falsely stating that the hospital had physical evidence linking him to the crimes. Appellant also argues that his waivers were not knowingly and intelligently made because he has only a sixth-grade education, a limited understanding of the Spanish language, worked in "menial employment" at a carwash, is from "Aztec peasant stock," and was "obviously highly upset being faced with the charge that he had molested his seven year old step daughter." According to appellant, these facts made his admissions "suspect" and "tend to demonstrate that [he] did not understand what he was doing when he spoke to the detective[] without counsel." Appellant's arguments are wholly unpersuasive.

As to the voluntariness of appellant's waivers, "'A statement is involuntary if it is not the product of "'a rational intellect and free will.'" [Citation.] The test for

4

determining whether a confession is voluntary is whether the defendant's "will was overborne at the time he confessed." [Citation.]'" (*People v. McWhorter* (2009) 47 Cal.4th 318, 346–347.) There is no evidence in the record that Detective Ramirez resorted to physical or psychological pressure to elicit a waiver of appellant's *Miranda* rights. Appellant's handcuffs were removed at the outset of his interview. Before appellant was read his *Miranda* rights, Detective Ramirez only asked general questions about appellant's job, family and where he was from. Detective Ramirez did not ask questions or engage in conduct that would elicit an incriminating response from appellant before he was read his *Miranda* rights. Only after appellant was read his *Miranda* rights and signed the waiver form, did Detective Ramirez use a "ruse." But even so, "Numerous California decisions confirm that deception does not necessarily invalidate a confession." (*People v. Thompson* (1990) 50 Cal.3d 134, 167.) Nothing here supports the finding that appellant's will was so overborne that his confession was not voluntarily made.

As to whether appellant made knowing and intelligent waivers, the record shows that appellant expressly waived his *Miranda* rights. Detective Ramirez read to appellant each of his *Miranda* rights and asked, after each one was read, whether appellant understood them. Appellant responded in the affirmative, and agreed to continue talking with Detective Ramirez. Before interrogating appellant, Detective Ramirez went over appellant's *Miranda* rights once more by having appellant read and sign a waiver form written in Spanish. Appellant initialed all of the questions, marked that he understood each right, and signed the form. At no time did appellant make any statements that he was confused as to what the waivers meant, or indicate an interest in invoking any of the listed rights.

Appellant's claim that he has a limited understanding of the Spanish language is not supported by the record. As the trial court noted, appellant "was able to carry out a conversation quite well [during] the entirety of the interview in Spanish." Detective Ramirez also asked appellant if he read Spanish and knew how to sign before having him complete the waiver form, and appellant responded, "Yeah."

5

Similarly, appellant's claim that he did not make an intelligent and knowing waiver of his *Miranda* rights because he has a limited education and worked at a car wash in menial employment does not assist him. As the People note, even if appellant possessed relatively low intelligence, he was sufficiently intelligent to attempt to deceive Detective Ramirez by initially claiming that he was just playing with A. There is no evidence that appellant lacked sufficient intelligence to understand his *Miranda* rights or the consequences of his waivers.

Accordingly, the trial court did not error in denying appellant's motion to suppress.

## II. The Trial Court Properly Denied Appellant's Request for A Nahuatl Interpreter

At the start of trial, appellant requested that a Nahuatl interpreter be appointed. The trial court denied the request, and appellant was assisted at trial by a Spanish interpreter. Appellant contends the trial court erred in denying his request. We disagree.

### A. Applicable Law

Interpreters perform three interrelated but distinct roles in a criminal proceeding: (1) as a "witness interpreter" to enable questioning of non-English speaking witnesses; (2) as a "proceedings interpreter" to enable a non-English speaking defendant to understand exchanges at trial among the witnesses, the attorneys, and the court; and (3) as a "defense interpreter" to enable a non-English speaking defendant to communicate with his or her English-speaking attorney. (*People v. Romero* (2008) 44 Cal.4th 386, 410.)

"The right to an interpreter has its underpinnings in a number of state and federal constitutional rights. These include a defendant's rights to due process, to confrontation, to effective assistance of counsel, and to be present at trial." (*People v. Romero, supra*, 44 Cal.4th at p. 410.) The California Constitution provides that a criminal defendant who does not understand English "has a right to an interpreter throughout the proceedings." (Cal. Const., art I, § 14.)

### B. Analysis

Appellant's claim that he was not sufficiently competent in the Spanish language such that he should have been appointed a Nahuatl interpreter is not supported by the

record. In denying appellant's request, the trial court noted that since 2011, appellant had made at least 15 court appearances, including the preliminary hearing, and had used a Spanish language interpreter at every appearance. At one point, appellant entered into a plea agreement and used the services of the Spanish interpreter to do so—directly answering all questions posed to him by the trial court. The trial court noted that appellant had "never indicated at any time until this moment that he needed any other interpreter." The trial court also noted that it had read the transcript of appellant's interview with Detective Ramirez and found that appellant addressed all the questions directly and did not indicate that he could not understand Spanish.

Accordingly, we find no error in the trial court's denial of appellant's request for a Nahuatl interpreter.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
        ASHMANN-GERST


We concur:


_____, J.
        CHAVEZ


_____, J.[*]
        FERNS

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.